IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH PERUGGIA,

    Plaintiff,

    v.

AMERICAN HOME ASSURANCE COMPANY,

    Defendant.

2:13-cv-6256-WY

MEMORANDUM

YOHN, J.                                                                                                March 11, 2014

       This action arises from Joseph Peruggia's submission of claims to his employer's insurer, the American Home Assurance Company ("American Home"), for underinsurance coverage related to injuries he suffered in an auto accident. While Peruggia and American Home ultimately settled the insurance claim, Peruggia claims here that American Home's conduct during the adjustment period breached the insurance policy (Count I) and violated 42 Pa. C.S.A. § 8371 (Count II).

       American Home now files a motion under Rule 12(b)(6) seeking dismissal of Count I of Peruggia's complaint. For the following reasons, American Home's motion will be denied.

**I.**     **Background**[1]

---

[1] This factual background represents the plaintiff's well-pleaded allegations in his amended complaint. At this early stage of litigation, I construe the plaintiff's allegations in the light most favorable to the plaintiff. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

In June 2002, Peruggia—a Verizon technician—was driving a Verizon vehicle in the course of his employment when it was rear-ended by a vehicle driven by non-party Timothy Ricci. According to Peruggia, he sustained incapacitating injuries in the accident and was unable to resume his position with Verizon. Ricci's vehicle was covered under an insurance policy providing for $500,000 in third-party coverage; the Verizon vehicle was covered by an American Home policy providing for $2 million in first-party underinsurance coverage.

In August 2010, Peruggia settled with Ricci's insurer for $451,673; American Home allegedly gave express consent to the agreement. Peruggia then pursued an insurance claim with American Home. In June 2011, Peruggia's attorney provided American Home's adjuster with Peruggia's medical records, reports from treating physicians, and a vocational expert's report on Peruggia's lost earnings—said to be over $1.5 million. According to the complaint, American Home was thereupon dilatory in its adjustment of Peruggia's claim, not making its first settlement offer until June 2013. That June 2013 offer would have included a global release of any claims in connection with Peruggia's claim for underinsured motorist benefits and, subsequent to the offer, American Home's attorney asked Peruggia's attorney if Peruggia intended to bring a statutory or common law bad faith claim related to the adjustment of the insurance claim. Peruggia alleges that, between June 2011 and August 2013, American Home willfully failed to adjust Peruggia's claim in a timely manner; adequately supervise outside counsel; make timely requests for necessary materials; evaluate damages fairly and in good faith; make reasonable, good faith settlement offers; negotiate without demanding a global release of claims; and communicate with Peruggia in good faith. In August 2013, one week before binding arbitration, Peruggia and American Home reached settlement in an amount of $1.65 million, allegedly to resolve the underinsured motorist claim only.

On October 15, 2013, Peruggia filed the instant action in the Philadelphia Court of Common Pleas claiming state law violations related to American Home's adjustment of Peruggia's claim. On October 25, 2013, American Home removed the action to this court on the basis of diversity jurisdiction. On November 15, 2013, Peruggia filed an amended complaint containing two counts: breach of contract and the implied covenant of good faith and fair dealing (Count I); and bad faith in dealing with an insured in violation of 42 Pa. C.S.A. § 8371 (Count II).

American Home now moves to dismiss Count I of Peruggia's amended complaint. According to American Home, Pennsylvania does not recognize a breach of contract action based on the bad faith of a first-party insurer. Further, American Home contends, any damages that Peruggia might otherwise recover are already satisfied by the settlement of Peruggia's insurance claim. In the alternative, American Home argues, the allegations in the complaint do not support Peruggia's recovery of damages for emotional distress or damages arising from American Home's demand for a global settlement of all claims.

## II.      Legal Standards

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6). In determining whether a complaint is sufficient, a court takes note of the elements the plaintiff must plead to state a claim, and, accepting all factual allegations in the complaint as true, determine whether the plaintiff's well-pleaded factual allegations plausibly give rise to an entitlement for relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). While a short and simple statement of entitlement to relief is all that is required to state a claim under Rule 8(a), vague or conclusory statements will not suffice: a claim is only plausible where the complaint pleads sufficient factual

content to raise the right to relief above the speculative level. *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007). Any reasonable inferences that may be drawn from the complaint must be drawn in the light most favorable to the plaintiff. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

**III.     Analysis**

    **A.     Pennsylvania Law and Breach of Contract for Bad Faith**

American Home contends Peruggia's Count I must fail because, under *D'Ambrosio v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 494 Pa. 501 (1981), Pennsylvania does not recognize a common law action based on a first-party insurer's alleged bad faith conduct. In *D'Ambrosio*, the Pennsylvania Supreme Court expressly declined to recognize a tort that would make actionable an insurer's bad faith denial of a claim by its insured. *See id.* at 508-11.[2]

In *Birth Center v. St. Paul Companies, Inc.*, 567 Pa. 386 (2001), the Pennsylvania Supreme Court considered whether a medical provider could bring a bad faith contract action where it alleged its insurer—which had defended the medical center in a negligence action brought by a patient—had acted unreasonably and in bad faith in refusing to negotiate a settlement to the negligence action.[3] *See id*. Addressing the defendant's contention that the action was barred by *D'Ambrosio*, the *Birth Center* court emphasized that *D'Ambrosio* only addressed the availability of a bad faith tort action and noted that, "at least since th[e] Court's 1957 decision in *Cowden* [*v. Aetna Cas. & Sur. Co.*, 389 Pa. 459 (1957)], common law contract rights permit an insured to recover compensatory damages in bad faith actions." *Birth Center*, 567 Pa. at 402

---

[2] At the time, the Pennsylvania code contained no statutory, private cause of action for insurer bad faith. *See Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 529 (3d Cir. 1997).

[3] Although the insurer indemnified the medical provider for the full judgment, the medical provider alleged that the insurer's refusal to negotiate harmed the medical provider's business, reputation, and credit. *See Birth Center*, 567 Pa. at 394.

n.12 (citing *Johnson v. Beane*, 541 Pa. 449, 458-59 (1995) (Cappy, J., concurring). The court further characterized *D'Ambrosio* as having "expressly stated that, in an appropriate case, an insured could recover compensatory damages based on a contract cause of action, because of an insurer's bad faith conduct." *Birth Center*, 567 Pa. 386 at 401 (citing *D'Ambrosio*, 494 Pa. at 509 n.5 ("The possibility cannot be ruled out that emotional distress damages may be recoverable on a contract where, for example, the breach is of such a kind that serious emotional disturbance was a particularly likely result.")).

Furthermore, the Third Circuit has stated that *Birth Center* "make[s] clear that an insurer's bad faith refusal to settle a claim can give rise to a contract cause of action." *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 236 (3d Cir. 2003). Because this is precisely the claim made by Peruggia in Count I of his complaint, American Home's contention that *D'Ambrosio* requires dismissal is unavailing.

      B.     Settlement of the Insurance Claim and Satisfaction of Count I

American Home next contends Peruggia is ineligible to recover damages for breach of contract based on alleged bad faith conduct by American Home as a result of the settlement of Peruggia's insurance claim. According to American Home, this settlement marked Peruggia's receipt of the full economic benefit of the insurance policy, such that his expectations under the policy have been satisfied and Peruggia is not entitled to any additional damages for breach of contract.

Ordinarily, if a plaintiff has received all proceeds due under the policy, then there are no damages and a breach of contract claim cannot be sustained. *See CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (stating elements of breach of contract). In *Birth Center*, however, the Pennsylvania Supreme Court found the insurer's payment of the

amounts owed under the policy "should not free it from other known or foreseeable damages it has caused its insured to incur," *Birth Center*, 567 Pa. at 400, and, as discussed above, *D'Ambrosio* expressly contemplated the possibility of emotional distress damages in a contract action based on bad faith conduct. *D'Ambrosio*, 494 Pa. at 509 n. 5. The Pennsylvania Supreme Court has therefore specifically recognized the possibility of compensatory damages for an insurer's bad faith conduct beyond the insurer's express obligations under the policy. Accordingly, American Home is not persuasive in its contention that the settlement of Peruggia's insurance claim forecloses the prospect of additional damages under the contract.[4]

### C.     Availability of Emotional Distress Damages

American Home next contends that, if Peruggia's Count I is not dismissed for the above reasons, dismissal is nonetheless warranted to the extent Count I seeks compensation for Peruggia's emotional distress.

American Home contends this question is controlled by *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 146-47 (3d. Cir. 2000), which stated that "under Pennsylvania law, to recover for mental anguish in a breach of contract case, [a] plaintiff must allege physical injury or physical impact." *See id*. However, *Nicholas* was decided prior to *Birth Center*, and *Birth Center* brought to the fore *D'Ambrosio*'s statement that "emotional distress damages may be recoverable on a contract where, for example, the breach is of such a kind that serious emotional disturbance was a particularly likely result." *See Birth Center*, 567 Pa. 386 at 401; *D'Ambrosio*, 494 Pa. at 509 n. 5. This suggests the Pennsylvania Supreme Court recognizes the availability of emotional distress damages regardless of physical impact if the plaintiff shows serious emotional distress is particularly likely to result from the defendant's breach. Moreover, American Home does not

---

[4] Whether a release was signed at the time of the settlement and, if so, whether it bars such a claim is not addressed in the amended complaint or the briefs.

cite any post-*Birth Center* authority applying a physical impact requirement, nor does it provide any cases citing *Nicholas* on this point.[5] On the arguments before me, I am not persuaded that Pennsylvania continues to impose a physical impact requirement after *Birth Center*, and I decline to impose such a requirement on Peruggia here.

American Home next argues that, "even if plaintiff could somehow allege physical injury or impact . . . Pennsylvania has recognized that breach of an insurance policy is not a circumstance that causes serious emotional disturbance." This contention is directly refuted by *D'Ambrosio*'s statement—reaffirmed in *Birth Center*—that "emotional distress damages may be recoverable on a contract where, for example, the breach is of such a kind that serious emotional disturbance was a particularly likely result." See *D'Ambrosio*, 494 Pa. at 509 n. 5; *Birth Center*, 567 Pa. 386 at 401.[6] Whether Peruggia can ultimately prove such allegations is, of course, a different matter, but the allegations in the amended complaint support a plausible claim.

### D.     Claim Based on Demand for Global Settlement

Finally, American Home contends Peruggia's breach of contract claim must be dismissed to the extent it is based on American Home's attempt to achieve a global settlement in its

---

[5] Notably, the portion of *Nicholas* referred to by the defendant is somewhat of an *ipse dixit* in an appeal in which "Nicholas raise[d] a host of substantive and procedural arguments." *Nicholas*, 227 F.3d at 136. The relevant portion cited two federal district court cases, each of which preceded *D'Ambrosio*. *See id*. at 146-47.

[6] Although not raised in American Home's motion (and therefore not presently at issue before the court), I note that the availability of compensatory damages in this case may depend on whether the losses in question were foreseeable to the breaching party. *See Birth Center*, 567 Pa. 390 ("[T]he insurer is liable for the known and/or foreseeable compensatory damages of its insured that reasonably flow from the bad faith conduct of the insurer."). While Peruggia alleges in his complaint that he suffered severe emotional distress as a result of delay in adjustment of his claims and that this was "foreseeable" to American Home, Peruggia does not allege American Home had actual notice that Peruggia's emotional distress was likely or foreseeable. *Cf. Amitia v. Nationwide Mut. Ins. Co.*, 2009 WL 111578 at *3 (M.D. Pa. 2009) ("[T]he plaintiffs allege that . . . with defendant's knowledge concerning plaintiff's medical and financial history, Nationwide could reasonably foresee that plaintiffs would suffer great fear, anxiety, and emotional distress as a result of defendant's misconduct.").

negotiations with Peruggia over his insurance claim.[7] American Home argues it is not probative of bad faith to ask for a global settlement, and, in any event, Peruggia cannot show damages from American Home's request. In response, Peruggia contends American Home's request was a delay-causing attempt to coerce Peruggia into releasing the bad faith claims that are at issue in the current litigation.

To Peruggia's point, there may be a valid cause of action where an insurer knows an insured is entitled to a policy limit but will only agree to make full payment if the insured agrees to a global release. *See Hayes v. Harleysville,* 841 A.2d 121, 127-28 (Pa. Super. 2003) *alloc. denied* 582 Pa. 686 (Pa. 2005). In general, however, "it is not inappropriate for an insurance company to attempt to resolve all claims with one settlement, particularly when there is no indication of an attempt to mislead." *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 593 (E.D. Pa. 1999). Under these circumstances, it is difficult to see how the claim based on American Home's request for global settlement can be successful. However, a plausible claim has been alleged and I will not dismiss at this early stage, but will allow the parties to develop a more specific factual record through discovery, and address the issue again at summary judgment or at trial.

An appropriate order follows.

---

[7] The global settlement alleged is a "global resolution of all claims . . . that do, our could, exist between the parties."